UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

IN RE: HARDIEPLANK FIBER CEMENT   Case No. 12-md-2359
SIDING LITIGATION                 MDL No. 2359

THIS DOCUMENT RELATES TO

STEVEN SCHINDLER,

                Plaintiff,

v.

                                    **MEMORANDUM OF LAW & ORDER**
                                    Civil File No. 14-285 (MJD)

JAMES HARDIE BUILDING PRODUCTS, INC.,

                Defendant.

---

Lawrence Deutsch, Shannon J. Carson, Robin Switzenbaum, and Jacob M. Polakoff, Berger & Montague PC, Counsel for Plaintiff Steven Schindler.

Christopher M. Murphy, Steven P. Handler, Aron J. Frakes, and Jeffrey Baltruzak, McDermott Will & Emery LLP, and Heidi A. O. Fisher and David C. Klink, Oppenheimer Wolff & Donnelly LLP, Counsel for Defendant James Hardie Building Products Inc.

**I.      INTRODUCTION**

1

This matter is before the Court on Defendant's Motion to Dismiss Claims of Steven Schindler. [Docket No. 11] The Court heard oral argument on May 23, 2014.

## II. BACKGROUND

### A. Factual Background

Defendant James Hardie Building Products Inc. manufactures a fiber-cement exterior siding. (Compl. ¶ 1.) In its advertising, Defendant stated that its siding had a 50-year transferable warranty and was designed and engineered to tolerate extreme weather. (Id. ¶¶ 2-3.) Defendant's siding was installed on Plaintiff Steven Schindler's house, in Wisconsin, in 2001 by a building contractor. (Id. ¶¶ 31, 34.) Schindler took over ownership and control of the house in the fall of 2001. (Id. ¶ 35.) In 2008, Schindler noticed that the siding began shrinking, warping, fading, gapping, and pulling away from the home. (Id. ¶ 36.)

On October 23, 2011, Schindler submitted a Warranty Claim Information Form to Defendant. (Compl. ¶ 38.) On October 31, 2011, Defendant denied his warranty claim and offered replacement product for him to use when making repairs. (Id. ¶ 39.)

### B. Procedural History

After their individual cases were consolidated in this Court as a Multidistrict Litigation, Plaintiffs, not yet including Schindler, filed a Consolidated Complaint. [MDL Docket No. 33] On July 15, 2013, this Court denied in part and granted in part Defendant's motion to dismiss the Consolidated Complaint. [MDL Docket No. 60]

On January 6, 2014, Schindler filed a Complaint against Defendant in the Eastern District of Wisconsin. [Docket No. 1] The Complaint alleges five counts: Count 1: Breach of Express Warranty; Count 2: Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose; Count 3: Deceptive Trade Practices, Wisconsin Statute § 100.18; Count 4: Unjust Enrichment; and Count 5: Declaratory and Injunctive Relief.

On January 31, 2014, the case was transferred to this Court pursuant to a Conditional Transfer Order. [Docket No. 2] Defendant has now filed a motion to dismiss: the portion of Count 1 based on breach of the informal express warranty; Count 2; Count 3; and Count 4. Defendant does not challenge the portion of Count 1 based on breach of the formal express warranty or Count 5.

**III.   DISCUSSION**

    **A.   Motion to Dismiss Standard**

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move the Court to dismiss a claim if, on the pleadings, a party has failed to state a claim upon which relief may be granted.  In reviewing a motion to dismiss, the Court takes all facts alleged in the complaint to be true.  Zutz v. Nelson, 601 F.3d 842, 848 (8th Cir. 2010).

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.  Thus, although a complaint need not include detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.

Id. (citations omitted).

In deciding a motion to dismiss, the Court considers the complaint and "matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned."  Miller v. Redwood Toxicology Lab., Inc., 688 F.3d 928, 931 n.3 (8th Cir. 2012) (citation omitted).

    **B.**    **Choice of Law**

"When analyzing questions of federal law, the transferee court should apply the law of the circuit in which it is located. When considering questions of state law, however, the transferee court must apply the state law that would have applied to the individual cases had they not been transferred for consolidation." In re Temporomandibular Joint (TMJ) Implants Prods. Liab. Litig., 97 F.3d 1050, 1055 (8th Cir. 1996) (citations omitted). Thus, the "transferee court must apply the 'choice-of-law rules of the states where the actions were originally filed.'" Id. (quoting In re Air Crash Disaster Near Chicago, Ill., 644 F.2d 594, 610 (7th Cir. 1981)).

Here, both parties agree that Wisconsin law applies. "The first rule in Wisconsin choice of law rules is that the law of the forum should presumptively apply unless it becomes clear that nonforum contacts are of greater significance." State Farm Mut. Auto. Ins. Co. v. Gilette, 641 N.W.2d 662, 676 (Wis. 2002) (citation and footnote omitted). Schindler filed his Complaint in Wisconsin. He is a Wisconsin resident, and his home, on which the siding was installed, is located in Wisconsin. He also brought a statutory claim under Wisconsin law.

    **C.**    **Count 1: Breach of Express Warranty**

### 1. Formal Express Warranty and Informal Express Warranty

Schindler alleges that Defendant breached express warranties about its siding because the siding did not perform as warranted. (Compl. ¶ 64.) He asserts two distinct theories of express warranty. He asserts a breach of Defendant's "formal" express warranty based on the certificates of warranty that Defendant issued with the siding. (Id. ¶ 61.) Defendant does not move to dismiss the formal express warranty claim.

Schindler also asserts a breach of an "informal" express warranty based on statements that Defendant made about its siding in its marketing and advertising. (Compl. ¶ 62.) Defendant moves to dismiss the informal express warranty claim based on the statute of limitations.

### 2. Breach of Informal Express Warranty Claim: Statute of Limitations

Under Wisconsin's Uniform Commercial Code ("UCC"), a claim for breach of warranty must be brought within six years of its accrual. Wis. Stat. § 402.725(1); Selzer v. Brunsell Bros. Ltd., 652 N.W.2d 806, 812 (Wis. Ct. App. 2002). A claim accrues "when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." Wis. Stat. § 402.725(2). The "breach of

warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." Id.

### 3. The Future Performance Exception

Defendant argues that none of the alleged informal express warranties explicitly extend to future performance, so Schindler's claim expired in 2007, six years after the siding was installed in 2001.

The future performance exception only applies when the warranty "explicitly extends" to future performance, i.e., when "a warranty guarantees a product for a particular number of years, or for a less precise, but still determinable period of time." Selzer, 652 N.W.2d at 813. "[V]ague statements concerning product longevity do not comply with the requirement of a 'specific reference to a future time' that would create a warranty of future performance within the meaning of Wis. Stat. § 402.725(2)." Id. at 813 (citing, e.g., Econ. Hous. Co., Inc. v. Cont'l Forest Prods., Inc., 805 F.2d 319, 320-21 (8th Cir. 1986) (holding that statement that a product "is intended for 'permanent' exterior exposure" was not a warranty of future performance); Cooper Power Sys., Inc. v. Union

Carbide Chems. & Plastics Co., Inc., 123 F.3d 675, 684 (7th Cir. 1997) (holding that statement that a product would maintain its "good appearance for 'many years'" was not a warranty of future performance), rejected on other grounds by Kaloti Enters., Inc. v. Kellogg Sales Co., 699 N.W.2d 205, 219 (Wis. 2005)).  "[A] future performance warranty must be clear, definite, precise, and unmistakable," and any "ambiguity in warranty language should be interpreted against the existence of a future performance warranty."  Midland Builders, Inc. v. Semling-Menke Co., 703 N.W.2d 383, 2005 WL 1639307, at *13-14 (Wis. Ct. App. 2005) (unpublished) (citing Selzer, 652 N.W.2d at 806).

For example, in Selzer, the plaintiff bought windows from the manufacturer's catalog; the catalog stated that "all exterior wood [used on the windows] is deep-treated to permanently protect against rot and decay."  Selzer, 652 N.W.2d at 814.  The Wisconsin Court of Appeals held that, as a matter of law, the statement from the catalog "falls short of guaranteeing either a rot-free level of protection or any determinable period during which such protection would last."  Id.

None of the alleged informal express warranties cited in Schindler's Complaint explicitly extend to future performance.  (See Compl. ¶¶ 3-4, 6.)

8

None of them guarantee that the siding will last for a particular number of years or for a determinable period of time.  Only one statement references a particular period:

> It's hard to say what's more beautiful.  The way our siding looks.  Or the way it stands up to the elements.  James Hardie siding is tough.  Remarkably so.  And to prove it, most of our products come with a 50-year transferable warranty. Rain.  Hail.  Impact.  Wind.  Fire.  Fluctuations in humidity.  Even hurricanes.  None of it stands a chance against James Hardie.

(Compl. ¶ 3.)  However, this reference is to the fact that the siding came with a 50-year transferrable warranty.  Schindler does not allege that Defendant's products did not come with a 50-year transferrable warranty, so there is no allegation that Defendant breached that promise.  An advertisement's reference to a formal limited warranty does not, on its own, create a new informal promise that the product will last for a certain amount of time without any of the terms or conditions of the limited warranty.  And Schindler states a separate claim based on the warranty itself.

Thus, as currently pled, none of the informal warranties explicitly extended to future performance, so the future performance exception does not apply and the claim began to accrue at tender of delivery in 2001.

## 4. Equitable Estoppel

"As a general rule, the possible existence of a statute of limitations defense is not ordinarily a ground for Rule 12(b)(6) dismissal unless the complaint itself establishes the defense." Joyce v. Armstrong Teasdale, LLP, 635 F.3d 364, 367 (8th Cir. 2011) (citation omitted). Schindler argues that, because he alleges equitable estoppel in the Complaint, the statute of limitations defense is not established on the pleadings. Defendant retorts that, under Wisconsin law, Schindler's discovery of the alleged latent defects is irrelevant to the accrual of the statute of limitations. It notes that the six-year period begins to run at the time of delivery "regardless of the aggrieved party's lack of knowledge of the breach." Wis. Stat. § 402.725(2).

In alleging equitable estoppel, Schindler alleges more than the fact that Defendant prevented him from discovering the defects: he alleges that Defendant took action to prevent him from filing suit. Specifically, in Paragraph 107, Schindler asserts: "Defendant is equitably estopped from asserting a statute-of-limitations defense based upon Plaintiff's and putative class members' reliance on the representations that Defendant or its agents would repair problems with its Siding." "Under the doctrine of equitable estoppel, if a buyer delays filing

suit as a result of reasonable and detrimental reliance on a seller's assurances it will repair the defective goods, the limitations period is tolled during that period of delay." Highway Sales, Inc. v. Blue Bird Corp., 559 F.3d 782, 789-90 (8th Cir. 2009).

The Complaint does not specify when Defendant promised to repair problems with the siding, but if that promise occurred before the six-year statute of limitations had already expired, then it could support equitable estoppel. Based on the Complaint, the expiration of the statute of limitations is not established. The Court denies the motion to dismiss Count 1.

### D. Count 2: Breach of Implied Warranties of Merchantability and Fitness for a Particular Purpose

In Count 2, Schindler asserts that Defendant breached implied warranties because the siding was unfit for its intended purposes and was not of merchantable quality. (Compl. ¶ 75.)

#### 1. Statute of Limitations

Defendant asserts that Schindler's breach of implied warranty claim is barred by the six-year statute of limitations found in Wisconsin's UCC. See Wis. Stat. § 402.725. For the same reasons that equitable estoppel bars dismissal of

Count 1, the Court declines to dismiss Count 2 based on the statute of limitations.

### 2. Privity

Defendant argues that Count 2 must also be dismissed because Schindler does not allege that he was in privity with Defendant. Wisconsin requires that "privity of contract must exist between buyer and seller in order to create an implied warranty." Lamont v. Winnebago Indus. Inc., 569 F. Supp. 2d 806, 815-16 (E.D. Wis. 2008).

Schindler claims that Defendant impliedly warranted the siding to him through his agent, the contractor. (See Compl. ¶¶ 72, 74.) Schindler asserts that he consulted with his contractor regarding which siding to apply to his home, and Schindler selected Defendant's siding. (Id. ¶ 32.) The contractor then acted for Schindler by purchasing the siding. Schindler claims that he never gave up the right to control the choice of siding decision. He argues that a plaintiff can be in privity through his agent, such as a contractor.

As currently pled, however, the Complaint fails to allege privity because it does not assert that Schindler's contractor purchased the siding directly from Defendant or Defendant's agent. See, e.g., Lamont, 569 F. Supp. 2d at 807, 816

(dismissing claim when plaintiffs purchased a Winnebago motor home from an RV dealership, "since there was no contract or sale between the [plaintiffs] and Winnebago, no implied warranties could have arisen as between those parties"); Ball v. Sony Elecs. Inc., No. 05-C-307-S, 2005 WL 2406145, at *4, 7 (W.D. Wis. Sept. 28, 2005) (dismissing plaintiffs' breach of implied warranty claim when plaintiffs alleged that they purchased Sony camcorders from "an authorized distributor" of Sony, because "plaintiffs are not in privity with [Sony] and are the beneficiary of implied warranties only from their immediate sellers").

The Court dismisses Count 2 for failure to allege privity. This dismissal is without prejudice. Schindler may reassert Count 2 if he amends his Complaint to allege facts to support privity.

### E. Count 3: Deceptive Trade Practices under Wisconsin Statute § 100.18

In Count 3, Schindler asserts that Defendant violated Wisconsin's Deceptive Trade Practices Act, Wis. Stat. § 100.18, through misrepresentations and knowing omissions regarding the quality and defective nature of the siding.

Defendant asserts that Count 3 must be dismissed based on the three-year period of repose. See Wis. Stat. § 100.18(11)(b)(3). Plaintiff concedes that Count 3 is not viable. Therefore, the Court dismisses Count 3.

F.   **Count 4: Unjust Enrichment**

In Count 4, Schindler alleges that he conferred substantial benefits on Defendant by purchasing its siding and Defendant has retained the benefit of those payments under inequitable circumstances because the siding did not perform as represented and warranted.

Defendant asserts that Count 4 fails because Schindler also alleges the existence of an express contract.  Wisconsin law provides that "unjust enrichment [is a] legal cause[] of action grounded in equitable principles and can be invoked only in the absence of an enforceable contract."  Carroll v. Stryker Corp., 658 F.3d 675, 682 (7th Cir. 2011).  Defendant argues that Schindler's unjust enrichment claim is based on an alleged contractual relationship.

The existence of an adequate remedy at law may foreclose Schindler's access to equitable remedies.  However, the Court concludes that the motion to dismiss Count 4 is premature.  At the motion to dismiss stage, Plaintiff is allowed to plead legal and equitable remedies in the alternative.  See, e.g., Daigle v. Ford Motor Co., 713 F. Supp. 2d 822, 828 (D. Minn. 2010) ("The Court will permit simultaneous pleading of the breach of warranty and unjust enrichment claims on the grounds that, under Federal Rule of Civil Procedure 8(d), a party is

permitted to plead in the alternative."). The question of whether, in fact, Count 4 is based on the contractual relationship between the parties is better addressed at a later stage of the case.

### G. Count 5: Declaratory and Injunctive Relief

Defendant does not move to dismiss Count 5, so Count 5 remains.

Accordingly, based upon the files, records, and proceedings herein, **IT IS HEREBY ORDERED**:

Defendant's Motion to Dismiss Claims of Steven Schindler [Docket No. 11] is **GRANTED IN PART** and **DENIED IN PART** as follows:

1. Count 2 is **DISMISSED WITHOUT PREJUDICE** to allow Schindler to amend his Complaint to allege privity.

2. Count 3 is **DISMISSED**.

3. Counts 1, 4 ,and 5 **REMAIN**.


Dated: June 30, 2014                s/ Michael J. Davis
                                                                       Michael J. Davis
                                                                       Chief Judge
                                                                       United States District Court